**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 1:25-cv-21513-JB**

ARCHER WESTERN – DE MOYA JOINT
VENTURE

       Plaintiff,

vs.

BERKLEY ASSURANCE COMPANY;
NORTH AMERICAN CAPACITY
INSURANCE COMPANY NKA SWISS RE
CORPORATE SOLUTIONS CAPACITY
INSURANCE CORPORATION; NATIONAL
FIRE & MARINE INSURANCE COMPANY;
INDIAN HARBOR INSURANCE COMPANY;
ALLIED WORLD SURPLUS LINES
INSURANCE COMPANY,

       Defendants.

_____/

## DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants NORTH AMERICAN CAPACITY INSURANCE COMPANY NKA SWISS RE CORPORATE SOLUTIONS CAPACITY INSURANCE CORPORATION ("Swiss Re"); NATIONAL FIRE & MARINE INSURANCE COMPANY; INDIAN HARBOR INSURANCE COMPANY; and ALLIED WORLD SURPLUS LINES INSURANCE COMPANY (collectively, the "Excess Insurers"), hereby move to dismiss Twenty Counts—Counts III, V, VII, VIII, IX, XI, XII, XIV, XV, XVI, XIX, XX, XXII, XXIII, XXIV, XXVI, XXVII, XXVIII, XXX, and XXXI—of the First Amended Complaint ("FAC") for failure to state a claim upon which relief may be granted. The grounds for this motion, as more fully stated in the accompanying memorandum of law, are as follows: (1) the dispute at issue

1

involving protective indemnity coverage is subject to appraisal in arbitration under the terms of the applicable Swiss Re insurance policy and applicable law, and this action is precluded until and unless an award is rendered in arbitration; (2) compliance with all policy provisions is a condition precedent to filing suit under the policy's no-action clause, and Plaintiff has not alleged its compliance with such provisions; (3) under the policy, the Excess Insurers have no obligation to pay Plaintiff's legal expenses in prosecuting Plaintiff's protective indemnity claim (in fact, such expenses are expressly excluded from coverage); and (4) Plaintiff has failed to plead that it satisfied the conditions of the applicable insuring agreement under rectification coverage.

COME NOW, Defendants, the Excess Insurers, by and through the undersigned counsel, hereby file their Motion to Dismiss the FAC with prejudice, and in support, state as follows:

## **INTRODUCTION**

Archer Western – de Moya Joint Venture (the "JV" or "Plaintiff") filed this action against its insurers seeking a determination of coverage for a first-party claim for protective indemnity coverage reported to the insurers involving an alleged design error by the JV's retained engineer, HDR Engineering, Inc. ("HDR") in connection with the design and construction of "the Signature Bridge" currently under construction in Miami, Florida.

Following the Court's October 2, 2025 Omnibus Order, which granted in part the Excess Insurers' Motion to Dismiss the Complaint without prejudice, Plaintiff filed its FAC on October 22, 2025. In the FAC, Plaintiff pleads additional allegations regarding its negotiation and settlement with HDR, separates numerous claims that were jointly pled against multiple Defendants, and asserts meritless, unsupported legal conclusions in an attempt to circumvent its agreement to participate in appraisal proceedings before filing litigation. Plaintiff's amendments

2

fail to cure the deficiencies previously identified and further confirm that Plaintiff cannot state a plausible claim for relief against the Excess Insurers due to Plaintiff's failure to comply with the conditions of the Swiss Re policy (FAC, ECF No. 70-2) (the "Policy"), to which the other excess policies follow form.

The Excess Insurers incorporate by reference the factual background and arguments set forth in their prior Motion to Dismiss the Complaint (ECF No. 41), as well as all exhibits filed in support of that motion, including the Excess Insurers' policies.

Plaintiff's FAC remains deficient for the reasons stated in the Excess Insurers' prior motion. The Policy requires that any dispute over the existence and extent of "loss" under the circumstance presented here—where Plaintiff alleges an enforceable limitation of liability provision in its contract with HDR—be resolved through appraisal in arbitration. The FAC's Counts relating to the alleged breach of purported coverage obligations under the Claim Settlement and Cooperation provisions and the Policy's Rectification Coverage Part fail for the reasons discussed in the Excess Insurers' prior motion; namely, Plaintiff has not pled and cannot plead that it ever submitted expenses with a request for approval and/or payment as required under such sections. Further, the Claim Settlement and Cooperation provisions clearly do not provide coverage for the expenses sought by Plaintiff – in fact, the Policy expressly excludes coverage for such expenses. Accordingly, all Counts asserted against the Excess Insurers in the FAC should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

## **LEGAL STANDARD**

3

To survive a motion to dismiss under Rule 12(b)(6), a "plaintiff must plead more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As the Eleventh Circuit has instructed, courts first "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). Having done so, the court is then to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

### I. All Counts Pled Against Excess Insurers Should be Dismissed with Prejudice for Failure to State a Claim

#### A. The FAC Fails to Plead Any Plausible Allegation Precluding the Enforceability of Endorsement 8's Arbitration Requirement

Plaintiff's amendments to the Complaint fail to address the deficiencies identified by the Excess Insurers in their prior motion or the issues identified by the Court at the hearing on such motion and the Court's subsequent Omnibus Order.

The granting of a motion to dismiss based upon the invocation of an arbitration provision is appropriate, as "permitting parties to litigate a dispute in court instead of proceeding to arbitration, if there is a right of arbitration, constitutes a departure from the essential requirements of law which cannot be remedied by appeal." *U.S. Fire Ins. Co. v. Franko*, 443 So. 2d 170 (Fla. 1st DCA 1983). Further, an appraisal clause contained in an insurance contract operates as a

4

condition precedent to bringing a claim under that contract. *United Community Insurance Company v. Lewis*, 642 So. 2d 59 (Fla. 3d DCA 1994). If one party to the insurance contract demands appraisal under the contract, the proper action is dismissal of the action until the condition precedent has been met. *Id*.

In this case, it is undisputed that the Policy exists and that the Policy contains Endorsement 8—the agreement to submit disputes to arbitration where Plaintiff alleges an enforceable limitation of liability in its contact with the design professional. This dispute constitutes an arbitrable issue that clearly falls within the scope of the arbitration agreement contained in Endorsement 8, which provides, in pertinent part, the following:

> In the event that the **Insured** and the Insurer are unable to reach agreement pursuant to subparagraph (2) above, as to the amount of any **loss** that the **Insured** would have been entitled to recover, in the absence of the **Limitation of Liability Provision**, from the **design professional** due to a negligent act, error or omission on the part of the **design professional**, then the parties agree that the exclusive remedy for resolving such dispute shall be arbitration with either party having the right to request arbitration. …
>
> . . . .
>
> The parties hereto agree that they have entered into this agreement by virtue of this clause to provide for a means of quickly settling disputes without resort to litigation, but this agreement in no way infringes on any rights to take such legal action accorded in the Service of Suit Clause of this Policy, the sole effect and intent of which is to provide, without waiver of any defense, an ultimate assurance of the amenability of the Insurer to due process in certain courts with respect to a claim hereunder following an arbitration decision determining that such amount is due. The parties agree however, that unless and until an award has been rendered by such panel of arbitrators, no other action or legal proceeding shall be commenced in respect of any claim hereunder.

(Policy, Endorsement 8, Form CPP0037 0518, at 2-3) (emphasis added).

Plaintiff alleges that the limitation-of-liability provision in its contract with HDR is enforceable. (FAC, ECF No. 70 at 12, ¶ 59.) Endorsement 8 requires Plaintiff to participate in the

5

appraisal process with respect to any claim "[w]here Loss has been limited by a **Limitation of Liability** Provision amount." The Endorsement further provides that Plaintiff may not commence any action or legal proceeding unless and until an award is rendered by a panel of arbitrators as contemplated in Endorsement 8. No such award has been rendered, and the Complaint contains no allegations to the contrary. In filing this action, Plaintiff contravened its agreement not to commence any action or legal proceeding in respect of its claims, and it may not proceed with such action or legal proceeding until and unless the requirements of Endorsement 8 have been fully satisfied.

### B. Endorsement 8 is Neither Inconsistent Nor Irreconcilable With the Policy's Other Provisions

In its FAC, Plaintiff pleads that Endorsement 8 is "inconsistent and irreconcilable with other provisions of the NAC [Swiss Re] and Excess Policies." (FAC, ECF No. 70 at 20, ¶ 95.) "Under Florida law, [a]n ambiguity exists only where contractual terms cannot be reconciled. [W]here the terms can be reconciled, the clear language of the contract controls. Moreover, [w]hen a contract contains apparently conflicting clauses, [the Court] must interpret it in a manner that would reconcile the conflicting clauses, if possible." *Gold Coast Prop. Mgmt. Inc. v. Certain Underwriters at Lloyd's London,* No. 18-CV-23693, 2019 WL 2482058, at *5 (S.D. Fla. June 14, 2019) (quoting *Lloyds Underwriters v. Netterstrom*, 17 So. 3d 732, 735 (Fla. 1st DCA 2009)) (alterations in original) (internal quotation marks and citations omitted).

The FAC suggests that Endorsement 8 conflicts with the Policy's Service of Suit Endorsement and "Action against the Insurer" provision of Section VII.D.2 (the "no-action clause") seemingly because Endorsement 8 contemplates arbitration as a means of dispute

resolution while the no-action clause contemplates litigation. As an initial matter, Endorsement 8 is neither inconsistent nor irreconcilable with the other provisions of the Swiss Re and Excess Policies as Endorsement 8 *only* applies with respect to any claim "[w]here Loss has been limited by a **Limitation of Liability** Provision amount." Stated simply, Endorsement 8 does not conflict with Policy's Service of Suit Endorsement and the no-action clause because Endorsement 8 only applies in a narrow set of circumstances (*i.e.*, "[w]here Loss has been limited by a **Limitation of Liability** Provision amount."). Accordingly, Endorsement 8 only contemplates arbitration where a limitation-of-liability provision exists, while the Policy's Service of Suit Endorsement and the no-action clause contemplate litigation in all other circumstances (assuming all conditions precedent provided by the Policy are satisfied). Further, Endorsement 8 expressly contemplates the possibility of litigation *after* an arbitration award has been entered. Thus, Endorsement 8 does not create ambiguity within the Policy.

Plaintiff's new "allegation" (*i.e.*, conclusion) that the arbitration requirement of Endorsement 8 conflicts with the Policy's Service of Suit Endorsement has been soundly rejected in this District, several circuit courts, and various Florida courts. *See e.g., Gold Coast Prop. Mgmt.,* 2019 WL 2482058, at *5; *Hart v. Orion Ins. Co.*, 453 F.2d 1358, 1361 (10th Cir. 1971) ("The assent of the insurer to jurisdiction does not prevent it from raising [an arbitration] defense based on policy terms."); *Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 79 F.3d at 298 (2d Cir. 1996); Century Indem. Co., 584 F.3d at 554 (3d Cir. 2009); *JHS Cap. Advisors, LLC v. Westchester Surplus Lines Ins. Co.*, No. 8:12-cv-2006, 2013 WL 616946, at *2 (M.D. Fla. Feb. 19, 2013) (Merryday, J.). Further, Section VI.C.3 of Endorsement 8 expressly provides: "this agreement in no way infringes on any rights to take such legal action accorded in

the Service of Suit Clause of this Policy, the sole effect and intent of which is to provide, without waiver of any defense, an ultimate assurance of the amenability of the Insurer to due process in certain courts with respect to a claim hereunder following an arbitration decision determining that such amount is due." (Policy, Endorsement 8, Form CPP0037 0518, at 3.) Accordingly, there is no conflict between these provisions.

Plaintiff further suggests conflict between Endorsement 8 and the "Action against the Insurer" provision of Section VII.D.2 of the Policy, which provides:

> 2.      As respects Coverage Part B, no action may be brought against the Insurer concerning this policy unless, as a condition precedent to such action, the **Insured** has fully complied with all the terms of this policy, and the **design professional's** liability and the amount of the **design professional's** obligation to pay has been decided either by final judgment against the **Insured** after actual contested trial, or by written agreement between the **Insured** and the **design professional** with the Insurer's prior approval.

(Policy, § VII.D.2, Form CPP0002 0417, at 13.)

This provision—the no-action clause—prohibits an action against the Excess Insurers unless, as a condition precedent, Plaintiff has fully complied with all the terms of the Policy. The terms of Endorsement 8 required Plaintiff to participate in appraisal procedures—and there is no dispute that Plaintiff did not comply with these Policy terms, as Plaintiff makes no allegation to the contrary.

Plaintiff's contention that Endorsement 8 is irreconcilable inasmuch as it does not "permit litigation to resolve disputes regarding coverage for insured Loss" is unavailing. As quoted above, Section VI.C.3 of Endorsement 8 contemplates "the amenability of the Insurer to due process in certain courts with respect to a claim hereunder following an arbitration decision determining that such amount is due." Further, "The parties agree however, that unless and until an award has been

8

rendered by such panel of arbitrators, no other action or legal proceeding shall be commenced in respect of any claim hereunder." (Policy, Endorsement 8, Form CPP0037 0518, at 3.) Accordingly, the no-action clause, the Service of Suit endorsement, and Endorsement 8 each contemplate the possibility of court proceedings—Endorsement 8 simply provides a condition precedent that must be satisfied *before* a lawsuit may be initiated; namely, that Plaintiff is precluded from initiating legal action until and unless an award is rendered by a panel of arbitrators. Plaintiff fails to identify any disharmony between these provisions because no such inconsistency exists.

To the extent that Plaintiff intends to argue that Endorsement 8 is inconsistent with the no-action clause due to purportedly different consent requirements, such argument is misplaced. Endorsement 8 amends Section II.I of the Policy to define "Loss" to mean, in relevant part, "the amount the Named Insured is legally entitled to recover from the design professional either by adjudication by a court of competent jurisdiction, arbitration or settlement or any other method of dispute resolution to which the Insurer agrees in writing." The position of the first usage of the word "or" in this sentence demonstrates that the list includes three items: (1) adjudication by a court of competent jurisdiction; (2) arbitration; *or* (3) settlement or any other method of dispute resolution to which the Insurer agrees in writing. This interpretation harmonizes the language of Endorsement 8 with the other provisions of the Policy, which invariably prohibit the Plaintiff from settling a protective indemnity claim without consent. Even if this provision is interpreted as not expressly including a consent requirement, it cannot reasonably be interpreted to *authorize* Plaintiff to settle without consent, particularly where other provisions of the Policy expressly prohibit Plaintiff from doing so.  Endorsement 8 expressly provides that "All other terms and conditions of this policy shall remain unchanged." (Policy, Endorsement 8, Form CPP0037 0518,

9

at 3.) Section VI.2.A of the Policy provides:

> The **Insured** shall not enter negotiations or settlement of a **protective indemnity claim** with the **design professional** or its representative involving any part of the Limit of Liability of this policy without the Insurer's knowledge and consent to such negotiation and settlement. However, the Insurer may, in writing, and at its election, waive participation and consent to such negotiation and settlement.

(Policy, § VI.2.A, Form CPP0002 0417 at 7.)

Endorsement 8 does not purport to amend or abridge the requirements of Section VI.2.A of the Policy, and Endorsement 8 is, at most, silent on whether consent is required. "[I]n construing a contract, the legal effect of its provisions should be determined from the words of the *entire contract*,' and that construction must give 'effect to *all* of the provisions of the contract." *Cafe Int'l Holding Co. LLC v. Westchester Surplus Lines Ins. Co.*, 536 F. Supp. 3d 1291, 1299 (S.D. Fla. 2021), *aff'd sub nom. Cafe Int'l Holding Co. LLC v. Chubb Ltd.,* No. 21-11930, 2022 WL 1510441 (11th Cir. May 13, 2022) (quoting *Summitbridge Credit Invs. III, LLC v. Carlyle Beach*, LLC, 218 So. 3d 486, 489 (Fla. 4th DCA 2017) (alteration in original) (internal quotations omitted). Thus, any interpretation that would render Section VI.2.A meaningless despite the absence of any language amending or contradicting such provision should be disfavored.

Notwithstanding the foregoing, if the Court finds that Section VII.D.2's additional requirement that the design professional's liability be set by adjudication or settlement with the Excess Insurers' consent is inconsistent with the provisions of Endorsement 8, Florida courts consistently hold that "[I]n general, to the extent an endorsement is inconsistent with the body of the policy, the endorsement controls." *Steuart Petroleum Co. v. Certain Underwriters at Lloyd's London,* 696 So. 2d 376, 379 (Fla. Dist. Ct. App. 1997); *see also Fireman's Fund Ins. Co. v. Levine & Partners, P.A.*, 848 So. 2d 1186, 1187 (Fla. Dist. Ct. App. 2003). Accordingly, any perceived

inconsistency between obligations imposed by Endorsement 8 and the no-action clause must be resolved pursuant to the terms of the endorsement, which expressly provide that Plaintiff cannot initiate an action against the Excess Insurers until an award has been rendered in arbitration.

**II.     Plaintiff Improperly Alleges Counts for "Breach of Contract" Against the Excess Insurers Based on Nonexistent Obligations Under the Policy's Claim Settlement and Cooperation Provisions and the Court Should Dismiss These Counts with Prejudice**

Plaintiff alleges that the Excess Insurers "failed to undertake their known obligation to share in the JV's fees and/or costs associated with procuring the records, information, and testimony of HDR in the underlying proceedings, pursuant to their respective obligations under the Claim Settlement and Cooperation Provisions of the Policies." (FAC, ECF No. 70 at 34, ¶ 169). No such obligation exists under the Policy, and in fact, the Policy's Protective Professional Indemnity Coverage Part B—under which Plaintiff is seeking coverage from the Excess Insurers— expressly *excludes* coverage for any expense incurred by Plaintiff "resulting from the investigation, adjustment, appeal or making of a **protective indemnity claim** against a **design professional**" (*i.e.*, HDR).  (Policy, § III.N, Form CPP0002 0417 at 7.)  While indemnity may be available to an insured under Coverage Part B provided that certain conditions are met, attorney fees and related expenses are not.

In support of its misleading allegation that the Excess Insurers have an obligation to share in Plaintiff's fees and costs, Plaintiff quotes Section VI.C.1 of the Policy, which is added to the Policy via Endorsement 8. This Section provides:

> C.  Where Loss has been limited by a **Limitation of Liability** Provision amount, the **Insured** shall fully cooperate with the Insurer in good faith to reach a fair and equitable determination of **loss** under this policy. This shall include responding promptly to requests for information and documentation by the

Insurer during its investigation of the **loss** and the process described in this endorsement for determining **Loss** outside of the mutual agreement between the **Insured** and the Insurer:

1.  The **Insured** shall obtain the cooperation of the **design professional** in the processes described in this endorsement including attendance of witnesses and presentation of evidence at such proceedings. The **Insured** shall endeavor to include language in any contract with a Design Professional requiring:

    a.  Participation and cooperation of the **design professional** in the processes described in this endorsement to determine **loss**; and

    b.  Release of records and other information, giving evidence, attending dispute resolution proceedings, hearings, trials, and obtaining cooperation of witnesses.

    All costs associated with obtaining the participation of the **design professional** in the proceedings shall be shared equally by **Insured** and the Insurer. Except as stated above, each party shall bear its own costs of participating in the process. The **Insured's** portion of these costs shall not be covered by this Policy nor shall they be applied to any **Self-Insured Retention**.

(Policy, Endorsement 8, Form CPP0037 0518, at 2.)

As stated in paragraph VI.C. above, Sections VI.C.1-3 set forth "the process described in this endorsement for determining **Loss** outside of the mutual agreement between the **Insured** and the Insurer." Section VI.C.1 obligates the Insured to obtain the design professional's cooperation "in the processes described in this endorsement." Section VI.C.2 provides that if, after obtaining the design professional's cooperation, the parties cannot determine an agreeable loss amount, the loss "shall be established by a neutral expert mutually agreed upon by the Insured and the Insurer." Section VI.C.3 provides that, if the parties do not mutually agree with the neutral expert's opinion, the exclusive remedy will be arbitration.

The "processes described in this endorsement" are: (1) participation in a neutral expert

evaluation; and (2) arbitration. Plaintiff has not pled that either process has taken place. In fact, Plaintiff asserts that it is not obligated to participate in the "alternate dispute resolution processes" of Sections IV.C.2. and IV.C.3 based on purported waiver, estoppel, and/or inconsistency of provisions. (FAC, ECF No. 70 at 21 ¶¶ 94-95.)

Plaintiff attempts to recharacterize its "fees and/or costs associated with procuring the records, information, and testimony of HDR in the underlying proceedings" (*i.e.*, routine litigation fees and costs) as costs incurred to obtain HDR's cooperation in the Endorsement 8 processes, which Plaintiff refused to participate in and seeks to avoid. This interpretation is both inconsistent with the Policy language and nonsensical in its application—no costs were necessary to obtain HDR's "cooperation" in the underlying proceedings; as the defendant in a lawsuit, HDR was legally obligated to "cooperate" with discovery requests, and HDR was responsible for its own defense expenses.

Furthermore, the Policy's Exclusions expressly provide that the Excess Insurers shall not be liable for **damages** or **loss** based upon or arising out of "attorney fees and related expenses incurred by the **Insured** resulting from the investigation, adjustment, appeal or making of a **protective indemnity claim** against a **design professional**." (Policy, § III.N, Form CPP0002 0417 at 7.) Accordingly, Plaintiff's assertion that the Excess Insurers were obligated to share discovery fees and expenses incurred in soliciting documents and testimony from HDR in its capacity as a defendant in connection with the underlying protective indemnity claim is meritless and contradicted by the language of the Policy.

Even assuming, *arguendo*, that Plaintiff's interpretation of Section V.C.1 is correct, it remains true that Plaintiff has not pled and is unable to plead that it ever in fact submitted to Excess

13

Insurers a request for payment of the alleged fees incurred. During the October 1, 2025 Omnibus hearing, the Court specifically advised Plaintiff that it was required to plead plausible allegations that a request for payment under Section V.C.1 was previously presented to the Excess Insurers. (ECF 69-1 at 142-3.) The FAC contains no such allegations, as no such request was ever made.

Based on the foregoing, Counts III, V, VII, VIII, IX, XXVI, XXVII, XXVIII, XXX, and XXXI against the Excess Insurers—pertaining to "Claim Settlement and Cooperation Provisions"—should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

**III.    The Court Should Dismiss with Prejudice the Counts under "Rectification Provisions" Because the FAC Fails to Identify Any Request for Reimbursement Submitted by Plaintiff to the Excess Insurers Under the Rectification Coverage Part**

The FAC seeks declaratory judgment for "Rectification Provisions" against the Excess Insurers, even though Plaintiff never made any request to Excess Insurers for reimbursement for rectification expenses.  Plaintiff fails to plead that it satisfied the conditions of the applicable insuring agreement under the Rectification Indemnity Coverage Part, which requires Plaintiff to submit proposed rectification expenses to the Excess Insurers in real-time, and receive written approval from Excess Insurers before such expenses are incurred.

Endorsement No. 1 to the Policy, titled Rectification Indemnity Endorsement ("Endorsement 1"), adds the following Coverage Part to the Policy:

**COVERAGE PART – RECTIFICATION INDEMNITY COVERAGE**

**I. INSURING AGREEMENT**

14

**A. COVERAGE**

The Insurer shall indemnify the **Named Insured** for the **rectification expenses** incurred by the **Named Insured** in rectifying a **design defect** in any part of the project works in respect of which the **Named Insured** is responsible for both design and construction, provided that:

1. The **design defect** is an alleged or actual negligent, act, error or omission committed in the performance of **professional services** for others by the **Insured**, or by any entity or person for whom the **Insured** is legally liable;

\* \* \*

3. During the **policy period,** the **Named Insured** <u>immediately</u> provides the Insurer with written notice of the **design defect**, with the proposed corrective action, if any, along with all supporting documentation, <u>in writing prior to incurring any rectification expenses</u>;

4. The **Named Insured** demonstrates to the Insurer's satisfaction that the proposed **rectification expenses** arise out of the **design defect** for which a third party could otherwise make a **claim** against the **Named Insured**; and

5. The Insurer approves the **rectification expenses** in writing, prior to it being incurred by the **Insured**.

If, in order to prevent or mitigate further harm, the **Insured** takes any immediate action that could incur **rectification expense**, but is not reasonably able to obtain prior approval from the Insurer in writing, the Insurer shall indemnify the **Insured** for such expense incurred over a period not exceeding ten (10) business days, beginning from the time the immediate action was taken, provided that the **Insured** can reasonably prove to the Insurer's satisfaction that such immediate action reduced the amount of the loss that would otherwise have been paid under this policy in the absence of such immediate action.

….

(Policy, Endorsement 1, Form CPP0006 1018, at 1-2 (emphasis added).)

According to the FAC, Plaintiff stated in a letter to Berkley: "while it pursues its protective indemnity claim, the JV simultaneously reserves the right to coverage under the Mitigation Provision and Rectification Provisions." (FAC, ECF No. 70 at 39 ¶ 201).

15

First, Plaintiff cannot "reserve the right" to retroactively seek Rectification coverage under the Policy—expenses must be submitted "immediately" to the Excess Insurers and approved by the Excess Insurers before being incurred. Furthermore, according to Plaintiff, it sought clarification "whether Berkley would allow the JV to store the information and send it only if we need to pursue the mitigation coverage." (FAC, ECF No. 70 at 39 ¶ 202.) Plaintiff does not, and cannot, plead that it did in fact "pursue the mitigation coverage" at any time before this action was filed, nor does Plaintiff allege that it ever sought or received written approval from the Excess Insurers before incurring any rectification expenses as required under Endorsement 1.

Second, Plaintiff pleads that it sent a letter *to Berkley* "reserv[ing] the right" to mitigation and rectification coverage and inquiring whether *Berkley* would allow Plaintiff to send certain information only "*if it elects*" to pursue the mitigation coverage. Plaintiff alleges that the letter "is understood to have been forwarded to the other Defendant Insurers" (FAC, ECF No. 70 at 39 ¶ 201), but the Plaintiff fails to plead that any request for approval and/or reimbursement of rectification expenses was made to or denied by the Excess Insurers. To the extent that Plaintiff implies that Berkley's lack of response to Plaintiff's letter somehow prevented Plaintiff from submitting rectification expenses for approval, Berkley's actions cannot be imputed to the Excess Insurers.

Accordingly, Plaintiff has failed to satisfy, and failed to plead its satisfaction of, the requirements for coverage under Endorsement 1 of the Policy, and Counts XIX, XX, XXII, XXIII, and XXIV of the FAC pertaining to "Rectification Provisions" should be dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

16

WHEREFORE, for the reasons stated above, the Excess Insurers move this Court for an Order dismissing Counts III, V, VII, VIII, IX, XI, XII, XIV, XV, XVI, XIX, XX, XXII, XXIII, XXIV, XXVI, XXVII, XXVIII, XXX, and XXXI of the FAC and for any further relief the Court deems just and proper.  First, Plaintiff's claim for protective indemnity coverage against Excess Insurers is subject to appraisal in arbitration under Endorsement 8 of the Policy, and Plaintiff has failed to plead that it has availed itself of the appraisal process.  Second, Plaintiff's compliance with all Policy provisions is a condition precedent to filing suit under the Policy's no-action clause, and Plaintiff has not alleged compliance with such provisions.  Third, payment of Plaintiff's legal expenses in prosecuting Plaintiff's protective indemnity claim is expressly excluded under the Policy, and therefore, Plaintiff cannot plausibly state a claim that it is entitled to this coverage from Excess Insurers.  Finally, Plaintiff has failed to plead that it satisfied the conditions of the applicable insuring agreement under the Policy's Rectification Indemnity Coverage Part (Endorsement 1).

For the Court's ease of reference, Counts XI, XII, XIV, XV, and XVI against the Excess Insurers pertain to **"Protective Indemnity Coverage"**, Counts III, V, VII, VIII, IX, XXVI, XXVII, XXVIII, XXX, and XXXI against the Excess Insurers pertain to the **"Claim Settlement and Cooperation Provisions"**, and Counts XIX, XX, XXII, XXIII, and XXIV against the Excess Insurers pertain to the **"Rectification Provisions"**. Plaintiff has been given an opportunity to amend its Complaint to cure its pleading defects, and the FAC fails to plead facts to support Plaintiff's twenty Counts against the Excess Insurers.  Therefore, each of the foregoing Counts should be dismissed with prejudice based on the FAC's failure to state a claim upon which relief may be granted against the Excess Insurers.

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20 day of November 2025, a true and correct copy of the forgoing was filed with the federal courts by using the CM/ECF portal, which will send an automatic e-mail message to the parties registered with the CM/ECF portal system:

COLE, SCOTT & KISSANE, P.A.
500 N. Westshore Blvd., Suite 700
Tampa, Florida 33602
(813) 289-9300
Email: john.kozak@csklegal.com

ATHERIA LAW PC
One Post Street, 37th Floor
San Francisco, CA 94104
(415) 613-8359
Email: christina.marshall@atherialaw.com
Email: cory.stumpf@atherialaw.com

*/S/ John J. Kozak*

John J. Kozak, Esquire
Florida Bar No.: 123961
Christina C. Marshall, Esquire
Cory D. Stumpf, Esquire

*Attorneys for North American Capacity Insurance Company n/k/a Swiss Re Corporate Solutions Capacity Insurance Corporation*

MARLOW, ADLER, ABRAMS & ROTUNNO

By: /s/ *Joel D. Adler*

Joel D. Adler (FL Bar No. 283223)
Phil Glatzer (FL Bar No. 055524)
4000 Ponce de Leon Boulevard, Suite 570
Coral Gables, Florida 33146
Telephone:     (305) 446-0500
jadler@marlowadler.com
pglatzer@marlowadler.com

ROPERS MAJESKI PC

19

Andrew L. Margulis (*Pro Hac Vice* forthcoming)
800 Third Avenue, 29th Floor
New York, NY 10022
Telephone: (646) 454-3242
andrew.margulis@ropers.com

*Attorney for Defendant National Fire & Marine Insurance Company*

PHELPS DUNBAR LLP

By: */s/ Bret M. Feldman*
Bret M. Feldman, Esq. | FBN 370370
Email: bret.feldman@phelps.com
Gabi Garcia, Esq. | FBN 1032333
Email: gabi.garcia@phelps.com
100 South Ashley Drive, Suite 2000
Tampa, Florida 33602
Telephone: 813 472 7550

PHELPS DUNBAR LLP
Thomas M. Contois, Esq. (*Pro Hac Vice* forthcoming)
4141 Parklake Avenue, Suite 530
Raleigh, NC 27612
Telephone: (919) 789-5336
Email: tom.contois@phelps.com

*Attorneys for Defendant Indian Harbor Insurance Company*

CARLTON FIELDS, P.A.

By: */s/ Heidi Hudson Raschke*
Heidi Hudson Raschke (FL Bar # 61183)
4221 W. Boy Scout Blvd. Suite 1000
Tampa, FL 33607
Telephone: (813) 223-7000
hraschke@carltonfields.com

*Attorneys for Defendant Allied World Surplus Lines Insurance company*

20